**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| S. SHANE SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| SECRETARY NC DOC THEODIS ) | **MEMORANDUM OPINION,** |
| BECK, DIRECTOR OF PRISONS ) | **ORDER AND RECOMMENDATION** |
| BOYD BENNETT, ) | |
| SUPERINTENDENT STEVE ) | 1:08CV166 |
| BAILEY, ROGER MOON, DOUG ) | |
| MITCHELL, LIEUTENANT LEWIS ) | |
| SMITH, EDITH T. POPE, GEORGE ) | |
| POPE, WANDA GORE, LARRY ) | |
| LANIER, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on a motion for summary judgment by

Defendants Theodis Beck, Boyd Bennett, Steve Bailey, Roger Moon, Doug Mitchell,

Lewis Smith, Wanda Gore and Larry Lanier (docket no. 67)[1] and a motion to strike

by Plaintiff (docket no. 81). The parties have responded in opposition to the

motions. In this posture, the matter is ripe for disposition. The parties have not

---

[1] Moving Defendants, together with their job titles at the time of the incidents giving rise to this complaint are: Theodis Beck, Secretary for the North Carolina Department of Corrections ("NCDOC"); Boyd Bennett, Director of Prisons for NCDOC; Steve Bailey, Western Region Director for NCDOC; Roger Moon, Western Region Operations Manager for NCDOC; Doug Mitchell, Superintendent of Craggy Correctional Center; Lewis Smith, Superintendent of Albemarle Correctional Institution; Wanda Gore, Unit Manager for Albemarle Correctional Institution; and Larry Lanier, Assistant Unit Manager for Albemarle Correctional Institution.

consented to the jurisdiction of the magistrate judge; therefore, the summary judgment motion must be dealt with by way of recommendation. For the following reasons, Plaintiff's motion to strike is denied, and it will be recommended that the court grant Defendants' motion for summary judgment.

## I. BACKGROUND

Plaintiff, a state inmate currently confined at Albemarle Correctional Institution ("Albemarle"), initiated this action by filing a pro se complaint in the Eastern District of North Carolina. On February 27, 2008, the case was transferred to this district. Following the appointment of counsel for Plaintiff, a second amended complaint was filed on December 30, 2008 (docket no. 19). Plaintiff alleges that Defendants Beck, Bennett, Bailey, Moon, Mitchell and Edith Pope violated his constitutional rights by failing to protect him from a substantial risk of sexual assault while in the custody of the North Carolina Department of Corrections. Plaintiff also alleges that Defendants Beck, Bennett, Bailey, Moon, and Mitchell, together with Defendants Smith, Gore and Lanier,[2] violated his constitutional rights by retaliating against him in violation of 42 U.S.C. § 1983, by unreasonably searching and seizing his property, in violation of the Fourth Amendment, by denying him the right to counsel, in violation of the Sixth Amendment, and by depriving him of due process, in violation of the Fourteenth Amendment. Plaintiff further asserts claims against Edith and George

---

[2] Throughout this recommendation, unless otherwise noted, Defendants Beck, Bennett, Bailey, Moon, Mitchell, Smith, Gore and Lanier will be referred to collectively as "prison official Defendants" or "moving Defendants."

Pope for malicious prosecution and intentional infliction of emotional distress.[3] The moving prison official Defendants filed a motion for summary judgment on August 5, 2010 (docket no. 67). These Defendants submitted various affidavits and exhibits in support of their motion, including an affidavit of Defendant Moon. One of the exhibits attached to Defendant Moon's affidavit is a copy of an internal, confidential investigation report, dated July 7, 2005, which was filed under seal. Plaintiff has moved to strike this document on hearsay grounds (docket no. 81).

## II. FACTS

Plaintiff is a forty-year-old Rutherfordton native who is serving a life sentence in prison, currently confined at the Albemarle Correctional Institution in Stanly County, North Carolina. He has been in the custody of the North Carolina Department of Corrections since 1990. Plaintiff was born with no fingers or toes. Plaintiff alleges that as a result of his disability he must rely on others for the performance of many essential daily tasks and that writing is a difficult and painful process for him. (Am. Comp. ¶¶ 19-20.)

From 1994 to 2005, Plaintiff was housed at the Craggy Correctional Center ("Craggy"), in Buncombe County, North Carolina. Craggy is approximately an hour from Plaintiff's parents' home in Rutherfordton. At Craggy, Plaintiff was assigned to administrative and computer jobs. He served as the clerk for Assistant Superintendent Edith Pope, who began working at Craggy in 2003. In her position

---

[3] George and Edith Pope have not filed a dispositive motion.

as Assistant Superintendent for Programs at Craggy, Mrs. Pope was responsible for all programs within the prison, as well as inmate job assignments, custody classifications, medical operations, and educational programs connected with a local technical college. (SBI Report at 17, Mitchell Statement.) Edith Pope's office was located in a secure, restricted area of Craggy.

It is undisputed that Plaintiff spent many hours working with Edith Pope in her office. There are multiple reports and affidavits in the record which confirm the close relationship between Plaintiff and Mrs. Pope, even before the incidents which form the basis of this action. Plaintiff apparently had relatively free movement through Craggy, and on occasion met Mrs. Pope in her office after regular business hours. According to Plaintiff, Mrs. Pope began sexually assaulting him in her office in July or August of 2004 and Mrs. Pope "forced [Plaintiff] to have sex with her several times a week over the next nine months." (Pl. Aff. ¶¶29-30.)

There were at least two incidents prior to May 2005 which aroused some suspicion with prison staff and officials. On February 16, 2005, Bruce Cravener, a case manager at Craggy, observed Plaintiff and Mrs. Pope in her office, and noted that Mrs. Pope appeared to be in a state of undress: "when entering Ms. Pope's office I saw her standing with her blouse and her slacks open at the waist exposing her underware [sic] but I can't say for sure if her slacks were pulled down or off completely." (Affidavit of Roger Moon, Ex. C, Cravener statement.) Mrs. Pope explained to Cravener that she had spilled tea on her pants and was attempting to

wipe it off, and she assured him that she was fine.  Cravener reported the incident

to John Hemingway, a training specialist at Craggy, who later went with Cravener

to speak to Mrs. Pope.  At the request of Mrs. Pope, Cravener and Hemingway

agreed not to report the incident to anyone else.

In April 2005, Defendant Mitchell spoke with Mrs. Pope:

> about how staff and inmates were talking and that I was afraid that
> Inmate Smith was going to get into trouble with the other inmates.  I told
> her he did not need to be working after hours and to quit using him so
> much.  She acted like she did not like it because of the statement she
> made.  She said that no one would say anything about Smith if it were
> Sergeant Hilemon who is a male officer.

(Moon Aff., Ex. C, Mitchell Statement.)  Following this conversation with Defendant

Mitchell, Mrs. Pope took sick leave until May 12, 2005. Four days later, on May 16,

2005, without the knowledge of any other officers or staff, Plaintiff was found to be

in Mrs. Pope's office after hours during an official inmate count.  The officer in

charge, Lt. Mike Ball, reported this incident to Assistant Superintendent Wade Hatley

and to Defendant Mitchell.  Mrs. Pope did not return to work the next day and again

took sick leave, until July 5, 2005.

In late May 2005, Mrs. Pope's husband, Defendant George Pope, reported to

Defendant Mitchell that Mrs. Pope had been threatened by Plaintiff.  Mr. Pope

requested that Plaintiff be transferred.  A couple of days later, the Popes told Mitchell

that Mrs. Pope had been raped by Plaintiff and that she had not reported it because

she was afraid.  An investigation was initiated, and Plaintiff was transferred out of

Craggy.  After Mrs. Pope returned to work on July 5, 2005, she was placed on administrative leave pending the outcome of the investigation.

The State Bureau of Investigation was called in to conduct the investigation. Mrs. Pope told investigators that the first rape occurred on October 3, 2004, in her office, and that there were at least five other occasions when Plaintiff raped her, continuing until April 2005.  Prior to undergoing a polygraph exam, however, Mrs. Pope admitted that she and Plaintiff had a consensual sexual relationship and that she had  not been raped by Plaintiff.  She stated that her husband wanted her to lie and say that she was raped.  She further stated that she felt manipulated and taken advantage of by Plaintiff.   According to Mrs. Pope, she had sex with Plaintiff approximately ten times.  (SBI Report at 28-32, Edith Pope interview.)  Following Mrs. Pope's admission, SBI investigators interviewed Plaintiff on July 22, 2005. Plaintiff reported that he and Mrs. Pope had sexual intercourse at least twenty times, and that the relationship was consensual. (SBI Report at 72-76, Shane Smith Interview.)

Mrs. Pope was eventually charged and convicted of sexual activity by a custodian.  N.C. GEN. STAT. § 14-27.7(a).  She received a sentence of twenty-two to thirty-six months in prison.  On July 8, 2005, Plaintiff's custody level was demoted to close custody, and he was transferred to Alexander Correctional Institution. On July 13, 2005, while the investigation was still ongoing, Plaintiff's custody level was further reduced to Intensive Control ("ICON"), and he was transferred to the ICON

6

housing unit at Marion Correctional Institution. On September 16, 2005, Plaintiff was transferred to Albemarle, where he remains today, and he was promoted to medium custody level.

## III. DISCUSSION

Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination, the court must view the evidence, and all

justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

Motion to Strike

Plaintiff has moved to strike the document entitled "Internal Investigation - Craggy Correctional Center" ("Internal Report") which was attached as an exhibit to the affidavit of Defendant Moon and submitted in support of Defendants' motion for summary judgment. Plaintiff argues that this Internal Report constitutes inadmissible hearsay and lacks any indicia of trustworthiness.

Defendant Moon is employed as the Region Operations Manager of the Department of Prisons Western Region. As such, Defendant Mitchell requested Moon's assistance in the investigation of the allegations involving Plaintiff and Mrs. Pope at Craggy in 2005. (Moon Aff. ¶ 6.) Moon conducted an investigation, using information obtained by Craggy staff and other information Moon personally obtained. (*Id.* ¶ 8.) His formal investigation report was dated July 27, 2005.[4]

Plaintiff objects to the admission of the Internal Report on several grounds. He complains that the Internal Report was prepared by one Defendant at the request of another and that Defendants are attempting to use the report to establish that Plaintiff had unauthorized access to the internet and signatures of Craggy

---

[4] This internal report is separate from the external SBI Investigative Report, which is also in the record.

Correctional Institution supervisory staff.   Plaintiff contends that the information in the report is based on inadmissible hearsay and that because the report "was prepared by a named defendant at the direction of another named defendant outside of the regular course of business and in anticipation of litigation" it should be stricken from the record.

Plaintiff's motion to strike fails because the Internal Report falls within exceptions to the hearsay rule.   Rule 803(6) of the Federal Rules of Evidence provides that records of regularly conducted activity are not excluded under the hearsay rule:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, . . . . unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

FED. R. EVID. 803(6).   The theory behind the business records exception is that "[r]eports and documents prepared in the ordinary course of business are generally presumed to be reliable and trustworthy."  *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 204-05 (4th Cir. 2000).  Plaintiff contends that the Internal Report prepared by Defendant Moon lacks indicia of trustworthiness because it was prepared in anticipation of litigation.  I disagree.  The internal investigation conducted by Defendant Moon was clearly part of his routine activity and responsibility as the

DOC Operations Manager for the Western Region, where Craggy is located. Moon stated in his affidavit that his duties and responsibilities include "providing consultation, problem solving, crisis intervention, guidance and other support . . ." and that during the course of his duties he "regularly conduct[s] DOC, DOP internal investigations of matters arising out of Western Region prison facilities." (Moon Aff. ¶¶ 4-5.) At the time of the investigation, there was no litigation pending; and, indeed, DOC officials were dealing with a delicate situation arising out of the improper relationship between an assistant superintendent and an inmate. Although Defendant Moon prepared the report at the direction of Defendant Mitchell, the investigation was within the normal course of his job responsibilities and was primarily related to possible personnel action against Mrs. Pope. As such, the Internal Report is admissible under Rule 806(6). Plaintiff's motion to strike is denied.[5]

Summary Judgment Analysis

### Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing an action "with respect to prison conditions" under 42 U.S.C. § 1983 must first exhaust all

---

[5] I have reviewed both the Internal Report and the SBI Investigation Report, both of which have been filed under seal in this action. I note that most, if not all, of the information contained in the Internal Report is also contained in the SBI Report.

available administrative remedies that are available to the prisoner.[6]  42 U.S.C. § 1997e(a).  The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  It is well settled by now that Section 1997e's exhaustion requirement is mandatory.  *See Jones v. Bock*, 549 U.S. 199, 211 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) (stating that the PLRA requires "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules"); *Anderson v. XYZ Correctional Health Servs., Inc.*, 407 F.3d 674, 676-77 (4th Cir. 2005) (citing *Porter*, 534 U.S. at 524).

Defendants contend that Plaintiff has failed to exhaust his administrative remedies with respect to his Eighth Amendment claims against them. Defendants specifically refer to Grievance No. 4580-08-410, which was submitted by Plaintiff on April 8, 2008.  In this grievance, Plaintiff requested a meeting with prison officials to discuss the incidents involving Edith and George Pope.  Defendants claim that after Plaintiff's grievance was rejected, he failed to resubmit the grievance or appeal it through all the levels of administrative review, thus effectively abandoning the administrative remedy process.  It appears from the record that Plaintiff did not

---

[6] In relevant part, 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

exhaust his administrative remedies regarding these claims. The court observes, however, that an internal investigation into all the events surrounding Plaintiff's claims was ordered. This appears to have taken the grievance out of the typical administrative remedy process. Consequently, I do not find that Plaintiff's claim should be dismissed for failure to exhaust.

**Eighth Amendment Claim**

Plaintiff contends that the actions of the prison officials[7] violated his Eighth Amendment rights because the sexual assaults he suffered amounted to cruel and unusual punishment. Sexual abuse of an inmate may be actionable where a correctional officer is in a position of authority over a prisoner. Sexual assault is "not a legitimate part of a prisoner's punishment, and the substantial physical and emotional harm suffered by a victim of such abuse are compensable injuries" under Section 1983. *Berryhill v. Schriro*, 137 F.3d 1073, 1076 (8th Cir. 1998); s*ee also Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Boddie v. Schneider*, 105 F.3d 857, 860-61 (2[d] Cir. 1977). Defendants here concede that the sexual assault in this case can support an Eighth Amendment claim ("Moving Defendants do not dispute that this conduct would constitute cruel and unusual punishment by Defendant Edith Pope in violation of Plaintiff's constitutional rights." *See* Brief in Supp. of Mot. For

---

[7] This claim is not brought against Defendants Smith, Gore and Lanier, who are prison officials at Albemarle. These three defendants were not present at Craggy when the events alleged in the amended complaint took place. Thus, in the context of the discussion of this claim, the term "moving Defendants" refers only to Defendants Beck, Bennett, Bailey, Moon and Mitchell.

Summ. J., p.12 (docket no. 68)).[8]  Nevertheless, moving Defendants contend that

Plaintiff's claims against them, based on supervisory liability, fall short.

Plaintiff alleges that the prison official Defendants knew, or should have

known, that Mrs. Pope was likely to sexually assault him, but that they failed to take

appropriate prevention measures and were deliberately indifferent to his plight.  In

order to establish supervisory liability under Section 1983, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his
> subordinate was engaged in conduct that posed a pervasive and
> unreasonable risk of constitutional injury to citizens like the plaintiff; (2)
> that the supervisor's response to that knowledge was so inadequate as
> to show deliberate indifference to or tacit authorization of the alleged
> offensive practices; and (3) that there was an affirmative causal link
> between the supervisor's inaction and the particular constitutional injury
> suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (quotations omitted).  Deliberate

indifference exists when an official "knows of and disregards an excessive risk to

inmate health or safety; the official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must

---

[8]  Because Defendants have conceded this issue, it is not necessary for the court to decide whether a consensual sexual relationship between an inmate and a prison official can form the basis for an Eighth Amendment claim.  While Plaintiff asserts that Mrs. Pope sexually assaulted him, and that her actions were unwelcome by him, there is evidence in the record suggesting that the nine-month sexual relationship between the two was consensual in nature.  There is a split of authority as to whether consensual sex between two adults, one an inmate, the other a prison guard or official, constitutes cruel and unusual punishment under the Eighth Amendment, even where the conduct of the prison official violates state law.  For the most recent discussion, and compilation of cases, see *McGregor v. Jarvis*, No. 9:08-CV-770, 2010 WL 3724133 (N.D.N.Y. Aug. 20, 2010).  Going even further, some courts have held that welcome, voluntary sexual interactions do not constitute pain and thus are not actionable under the Eighth Amendment.  *Id.* at *11 n.12.

also draw the inference." *Farmer*, 511 U.S. at 837. In other words, in order to impose supervisory liability on moving Defendants for the actions of their subordinates, Plaintiff must show that these Defendants were aware of a pervasive and unreasonable risk of harm from a specified source and that they failed to take corrective action as a result of deliberate indifference or tacit authorization. *Shaw*, 13 F.3d at 799. There must be an affirmative causal link between the supervisory inaction and the harm suffered. *Slakan v. Porter*, 737 F.2d 368, 376 (4th Cir. 1984). In order to show deliberate indifference, a plaintiff must demonstrate a supervisor's "'continued inaction in the face of documented widespread abuses.'" *Shaw*, 13 F.3d at 799 (quoting *Slakan*, 737 F.2d at 373). Moreover, a supervisor cannot "reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Slakan*, 737 F.2d at 373; *see Randall v. Prince George's County*, 302 F.3d 188, 206 (4th Cir. 2002).

Here, Plaintiff has simply not shown that Defendants were aware of a pattern or practice of a high-ranking prison official engaging in sexual abuse of prisoners. While the relationship between Mrs. Pope and Plaintiff continued for several months, it is important to note that Mrs. Pope was the assistant superintendent at Craggy. She had authority over most of the employees and other staffers at Craggy. Thus, for most of the period during which Mrs. Pope and Plaintiff were engaging in a sexual relationship, no one suspected anything, or if there were suspicions among

some of the staff, they were not voiced or reported to the Superintendent. There is no evidence that Mrs. Pope had engaged in such conduct prior to her involvement with Plaintiff. Once Defendant Mitchell was informed of the incident involving Plaintiff being discovered in Mrs. Pope's office after hours, together with other suspicions, Mitchell initiated an internal investigation, referred the matter to the SBI for investigation, and transferred Plaintiff out of Craggy. These actions all took place within weeks of the incident reported to Defendant Mitchell. Notably, at this early stage of the investigation, which was reportedly months after the sexual contact between the two first began, Mrs. Pope had alleged that she had been raped by Plaintiff and felt threatened by him. While Defendants no doubt have a duty to keep inmates safe, they also must ensure the safety of prison employees. The investigative process was not unreasonable. In a relatively short period of time, prison officials, including Defendant Mitchell, had to deal with suspicions, reports of threats, rape, and ultimately, criminal charges against an assistant superintendent.

In his affidavit, Plaintiff contends that he made several requests to Defendant Mitchell for another job assignment to get away from Mrs. Pope. According to Plaintiff, his requests were denied because he "was too indispensable at administrative work to be transferred." (Pl. Aff. ¶ 32.) Nevertheless, there is no other evidence of such requests, and more important, Plaintiff never reported the alleged sexual abuse to any prison official, and there is no evidence suggesting that the prison official Defendants knew that there was anything of a sexual nature going

on between Plaintiff and Mrs. Pope. Moreover, a party may not rest on self-serving conclusory allegations to survive summary judgment. While Cravener witnessed a questionable incident in Mrs. Pope's office, the evidence suggests that Mrs. Pope and Plaintiff lied about what was going on, and although Cravener later discussed the incident with Mrs. Pope, he apparently did not report it to others higher up in the chain of command at Craggy (or the DOC).

Plaintiff has simply failed to put forward evidence of moving Defendants' "continued inaction in the face of documented widespread abuses." As such, moving Defendants' motion for summary judgment on Plaintiff's Eighth Amendment claim should be granted.

### Equal Protection Claim

Plaintiff also contends that the actions of the prison official Defendants amounted to a violation of his equal protection rights. Specifically, Plaintiff asserts that the failure of the prison officials to investigate and take action "to prevent [Mrs.] Pope's sexual assaults, abuse, and harassment of Plaintiff" was based on Plaintiff's gender, depriving him of his "constitutional right to equal protection under the laws." (Am. Compl. ¶¶ 78-80.)

The Equal Protection Clause of the Fourteenth Amendment prohibits governmental decision makers from treating persons differently who are in all

relevant respects alike.[9]  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985); *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).  "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination."  *Morrison*, 239 F.3d at 654.  Once a plaintiff makes such a demonstration, the court must determine whether such a disparity in treatment can be justified under the requisite level of scrutiny.  *See, e.g., City of Cleburne*, 473 U.S. at 439-40; *In re Long Term Admin. Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 471 (4th Cir. 1999).  After such a threshold demonstration is made, the court must determine if the disparity in treatment is reasonable in light of the special security and management concerns in the prison system.  *See Morrison*, 239 F.3d at 655 (citing *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 136 (1977)).

Plaintiff here has failed to make the threshold showing of disparate treatment and intentional discrimination.  He has not shown that he has been treated differently from other similarly situated inmates with regard to an investigation of sexual assault by a prison guard or official.  He has not provided any evidence of other inmates who were victims of a sexual assault, nor has he provided any evidence which suggests

---

[9]  In relevant part, this clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XVI, § 1.

purposeful or intentional discrimination.  Absent such evidence, Plaintiff's equal protection claim cannot survive summary judgment.

**Retaliation Claim**

Plaintiff also contends that he was transferred to another prison facility, his custody level was changed, his cell was searched and property seized, and he lost good time credits in retaliation for the exercise of his constitutional rights to defend himself against the false rape charges filed by George and Edith Pope.  (Am. Compl. ¶¶ 66-67).  This claim is without merit.

Retaliation against an inmate for the exercise of a constitutional right may be actionable under Section 1983.  *ACLU v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993).  Nevertheless, a plaintiff alleging retaliatory punishment "bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision . . . ."  *Graham v. Henderson*, 89 F.3d 75, 79 (2[d] Cir. 1996).  The burden then shifts to the defendant to show that the plaintiff would have received the same punishment even absent the retaliatory motivation.  *Id.* at 80.  Moreover, even if a prison official's conduct affects protected rights, courts should defer to the official's decisions which are aimed at protecting internal security and order, so long as they are "reasonably related to legitimate penological interests."  *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989).

The evidence in the record here shows that in the wake of Mrs. Pope's initial rape charges against him, Plaintiff was transferred to Cleveland Correctional Center on May 26, 2005, and placed in Administrative Segregation. In July 2005, while the investigation at Craggy was continuing, Plaintiff was transferred to Marion Correctional Institute and demoted to Close Custody status. He was placed in an intensive control facility at Marion to provide security and control, and easy access by investigators, pending the outcome of the investigation. Following the completion of the investigation, Plaintiff was transferred to Albemarle and promoted to medium custody status. (Moon Aff., Ex. B.)

Here, there is no factual support in the record that the actions of Defendants were undertaken with retaliatory motives. Under the circumstances, involving an initial rape investigation which then developed into a criminal investigation of a prison official, Plaintiff's transfer and demotion in custody status were reasonable. Plaintiff's claims that his transfers and changes in custody status were retaliatory are conclusory and unsupported.[10]

Plaintiff's claim that he was not given certain job assignments, as retaliation for reporting the sexual assaults, is similarly without merit. The record shows that Plaintiff has not been assigned to a full-time job for several reasons, most important, based on the ratio of the number of jobs available to the number of inmates confined

---

[10] I note as well that prison inmates do not have a liberty interest in a certain prison classification arising from the Due Process Clause itself. *Hewitt v. Helms*, 459 U.S. 460, 469 (1983).

at Albemarle. Plaintiff's disability limits the number of jobs which he can perform; and, according to his case manager, Plaintiff is unwilling to be transferred to another unit at Albemarle where there would be more job possibilities. (Aff. of Russell Ramsey ¶¶ 9-10.) It appears that Plaintiff's lack of job assignment is more a product of the unavailability of positions, combined with his personal preferences. There is simply no evidence that his job status is the result of retaliation on the part of the moving Defendants.[11]

Plaintiff also contends that the searches of his cell and personal property during the investigation were retaliatory and violated his right to due process under the Fourteenth Amendment and constituted an unreasonable search and seizure in violation of the Fourth Amendment. There is no evidence that the searches of Plaintiff's cell and seizure of his property were retaliatory in nature. The searches were conducted as part of the ongoing investigation of the relationship between Plaintiff and Mrs. Pope. During that investigation, prison officials discovered that Plaintiff had been allowed unauthorized access to Mrs. Pope's computer, through which he also gained unauthorized internet access. Officials discovered and confiscated from Plaintiff a LEXAR Thumb Drive containing confidential prison

---

[11] Plaintiff likewise has presented no evidence that any good time credits he has earned were taken away in retaliation for his protected conduct. Records attached to Defendants' brief in support of summary judgment show that Plaintiff has not lost any time which would have advanced his parole eligibility date. *See* Br. In Supp. of Summ. J. Ex. H.

information, which resulted in a legitimate concern for prison integrity and security. (*See* Moon Aff. ¶¶ 4-5.)

The seizure of the computer information from Plaintiff was reasonable under the circumstances. Plaintiff has not put forth any evidence that the seizure was in retaliation for his exercise of his constitutional rights. The property inventories which are in the record, furthermore, show that Plaintiff's other personal property was returned to him following his transfer from Craggy. (*See* Moon Aff., Ex. D.)[12]

**Access to Courts**

Finally, Plaintiff has alleged that officials at Albemarle "confiscated and have not returned legal documents and books belonging to Plaintiff and pertaining to his administrative grievances and lawsuit under the Americans with Disabilities Act." (Am. Compl. ¶ 50.) The United States Constitution guarantees prisoners the right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817 (1977). A prisoner must show some actual injury resulting from a denial of access, however, in order to allege a constitutional violation. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). This requirement can be satisfied by demonstrating that a non-frivolous

---

[12] To the extent that Plaintiff has alleged a claim for the wrongful seizure of his property, he has failed to state a federal claim. Even intentional deprivations of a prisoner's property by state employees acting within the scope of their employment are not actionable under Section 1983 if adequate post-deprivation state remedies are available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). North Carolina provides adequate post-deprivation remedies for Plaintiff to pursue. *Wilkins v. Whitaker*, 714 F.2d 4 (4th Cir. 1983); *Sheppard v. Moore*, 514 F. Supp. 1372 (M.D.N.C. 1981).

legal claim was frustrated or impeded by some actual deprivation of access. *Id.* at 352-53

Plaintiff has not shown any actual injury from the alleged confiscation of his legal papers. He has not alleged or shown that such seizure has limited his ability to file lawsuits or pursue litigation in court. As such, Plaintiff's claim is without merit and moving Defendants should be granted summary judgment on this claim.

**Qualified Immunity**

Moving Defendants also assert the defense of qualified immunity. Qualified immunity is "an entitlement not to stand trial or face other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Because the court should find no constitutional violation in the first instance, there is no need to conduct a qualified immunity analysis. *See generally Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009) (abrogating *Saucier v. Katz,* 533 U.S. 194 (2001), by holding that courts are not required to determine whether a violation of a constitutional right occurred before determining whether the right was clearly established for purposes of qualified immunity).

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's motion to strike (docket no. 81) is **DENIED**. Furthermore, **IT IS RECOMMENDED** that the court **GRANT** moving Defendants' motion for summary judgment (docket no. 67) and dismiss Plaintiff's claims against the moving Defendants with prejudice. Of course, this does not end

the matter. The Eighth Amendment claim against Edith Pope survives, and the malicious prosecution and intentional infliction of emotional distress claims against both Edith Pope and George Pope survive.

_____
WALLACE W. DIXON
United States Magistrate Judge

January 10, 2011